MCGREGOR W. SCOTT
United States Attorney
MICHELLE RODRIGUEZ
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

**FILED**

MAY 07 2018

CLERK, U.S. DISTRICT COURT
STERN DISTRICT OF CALIFORNIA

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

TOU FUE LOR,

Defendant.

CR 13-385-KJM
CR 18-073-KJM

**PLEA AGREEMENT**

1. The Information in this case charges the defendant with violations of 18 U.S.C. § 1341 – Mail Fraud (5 Counts), 18 U.S.C. § 1344(1) and (2) – Bank Fraud and Attempted Bank Fraud (3 Counts), 18 U.S.C. § 1028A(a)(1) - Aggravated Identity Theft (2 Counts), 18 U.S.C. § 1014 – Credit Application Fraud, and 18 U.S.C. § 1028(a)(3) – Unlawful Possession of Five or More Identification Documents. This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case and the superseding violation petition in Cr 13-385-KJM. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

2. The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court. The Court may take into consideration any and all facts and circumstances concerning the criminal activities of the defendant, including activities which may not have been charged in the Information. The Court is under no obligation to accept any recommendations made by

the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including any statutory maximum stated in this plea agreement.

3. If the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw his guilty pleas, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

4. In this case, the defendant will plead guilty as follows:

| Count | Offense | Description |
|---|---|---|
| 2, 3 | 18 U.S.C. § 1341 | Mail Fraud |
| 7 | 18 U.S.C. § 1344(1)(2) | Bank Fraud |
| 9 | 18 U.S.C. § 1028A(a)(1) | Aggravated Identity Theft |
| 11 | 18 U.S.C. § 1014 | Credit Application Fraud |

The defendant also agrees to forfeiture of all items seized between May 20, 2017 and July 11, 2017 (except for (1) a Vizio 50" TV, (2) an apple iphone 6, and (3) an X-Box Gaming System (all seized by Roseville P.D. on July 11, 2017))[1] in this case and as may be ordered by the district court at sentencing. The defendant specifically agrees to forfeiture of the described seized items (materials, documents, and proceeds) and that such forfeiture be ordered by the district court at sentencing. The defendant will also admit charges 1, 2, 3, and 4 in the superseding supervision violation petition in Cr 13-385-KJM (filed 3/15/18), as follows:

| Charge | Description |
|---|---|
| 1 | mandatory condition prohibiting use of illicit drugs/controlled substances |
| 2 | mandatory condition prohibiting new law violation (2017 federal charges) |
| 3 | mandatory condition prohibiting new law violation (2018 state charges) |
| 4 | standard condition requiring regular reporting to US Probation |

The defendant agrees that he is in fact guilty of the charges contained in Counts 2,3,7,9 and 11 of the Information and further admits as true charges 1,2,3, and 4 set forth in the superseding supervision violation petition. Lor further agrees that (1) the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate and (2) all statements in the superseding petition's justification section and its statement of evidence of alleged supervised release violations are true and accurate. The

---

[1] By stipulation and agreement, the 3 items must be retrieved between 30 and 90 days after judgment and sentencing by family member Chai Lor or thereafter shall be forfeited for destruction.

Plea Agreement (Lor) 2

defendant agrees that this plea agreement will be filed with the Court and become a part of the record of each case. The defendant understands and agrees that he will not be allowed to withdraw his pleas or admissions should the Court not follow sentencing recommendations or stipulations, if any, contained herein. The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives rights to further discovery, if any, and waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410. The defendant acknowledges that he shall remain remanded into federal custody after the entry of his pleas.

5. The defendant agrees that his conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1) and (2) and agrees to pay the full amount of restitution to all victims affected by all of his offense conduct, including, but not limited to, the victims covered in the factual basis, victims covered in those counts to be dismissed as part of the plea agreement pursuant to 18 U.S.C. § 3663A(a)(3), and other victims as a result of the defendant's relevant conduct for the offenses charged and for his uncharged offenses as indicated in the underlying complaint. The defendant understands that the factual basis of this plea agreement binds only the United States Attorney's Office for the Eastern District of California in this criminal case, and does not bind any agency of the United States in any other judicial, administrative, or other proceeding. The defendant further agrees that he will not seek to discharge any restitution obligation or any part of such obligation in any bankruptcy proceeding.

6. The defendant agrees to pay any fine imposed by the district court and he shall pay a special assessment of $100 per count at the time of sentencing by delivering a check or money order (payable to the United States District Court) to the United States Probation Office immediately before the sentencing hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

7. If the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution

and sentencing as set forth herein. One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any "post-plea" conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement will be under a probable cause standard.

8. If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

9. By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts / charges including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts / charges that were not time-barred as of the date of this plea agreement.

10. In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.

1 By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

2   11. The defendant agrees to forfeit to the United States voluntarily and immediately all of his right, title, and interest to any and all seized items. The defendant agrees to fully assist the government in the forfeiture of the seized items and to take whatever steps are necessary to pass clear title to the United States. The defendant agrees not to file a claim to any of the seized and or forfeited property in any civil proceeding, administrative or judicial, which may be initiated. The defendant agrees to waive his right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

   12. The defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of seized assets and items. The defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets in any proceeding. The defendant agrees to waive any jeopardy defense, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the assets by the United States, the State of California or its subdivisions.

   13. The defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defenses or defects that may pertain to the forfeiture.

   14. The defendant agrees to make a full and complete disclosure of his assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that this plea agreement is voidable at the option of the government if the defendant fails to complete truthful documents and provide the described documentation to the United States Attorney's office within the allotted time.

   15. The government agrees to move, at the conclusion of the sentencing hearing, to dismiss without prejudice the remaining counts in the Information. The government also agrees not to reinstate any dismissed count except if this agreement is voided. The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of his offense level if the defendant clearly demonstrates acceptance of responsibility

1 for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting
2 the probation officer in the preparation of the pre-sentence report, being truthful and candid with the
3 probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the
4 meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the
5 sentencing proceeding. If Lor fully accepts responsibility, then -- by this agreement -- the United States
6 and Lor shall jointly recommend at sentencing the low end of the applicable guideline range found by
7 the US Probation Office in its final presentence report plus 24 months consecutive for conviction under
8 18 USC 1028A and the United States and Lor will further recommend this combined term shall run
9 "consecutive" (additionally) to any recommended term for his violation of conditions of supervised
10 release (under Cr 13-385-~~JAM~~ KJM). Otherwise, the parties reserve all other rights under the sentencing
11 guidelines and 18 USC 3553 factors. TFL

12     16. The government is free to provide full and accurate information to the Court and Probation,
13 including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate
14 statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also
15 understands and agrees that nothing in this Plea Agreement bars the government from defending on
16 appeal or collateral review any sentence that the Court may impose.

17     17. **As to Counts 2 and 3 (Mail Fraud),** the defendant agrees that, at trial, the United
18 States would be required to prove beyond a reasonable doubt during the time charged the following.

19 1) In the EDCA, the defendant devised and intended to devise a scheme to defraud, and to obtain money and property by means of false or fraudulent pretenses, representations or promises;
20 2) For the purpose of executing the scheme or artifice or attempting to do so the defendant knowingly caused to be delivered by mail or by any private or commercial interstate carrier any matter or thing
21 according to the direction thereon;
22 3) the false pretenses, representations, or promises that the defendant made were material.

**As to Count 7 (Bank Fraud),** the defendant agrees that, at trial, the United States would be required to
23 prove beyond a reasonable doubt during the time charged the following.
24
25 1) In the EDCA, the defendant knowingly executed a scheme or plan to obtain money or property from financial institutions, as charged in the Information, by means of false or fraudulent pretenses, representations, or promises;
26 2) the defendant knew the representations, pretenses, and promises were false and acted with specific intent to defraud such financial institutions;
27 3) the false pretenses, representations, or promises that the defendant made were material;
4) the defendant placed the financial institutions at risk of civil liability or financial loss; and
28 5) the financial institutions were federally insured.

Plea Agreement (Lor)     6

**As to Count 9 (Aggravated I.D. Theft)**, the defendant agrees that, at trial, the United States would be required to prove beyond a reasonable doubt during the time charged the following.

1) The defendant acted in the Eastern District of California;
2) By his actions, the defendant knowingly and intentionally possessed and used, without lawful authority, means of identification of another person; and
3) the possession and use of the means of identification was during and in relation to a felony bank fraud scheme to obtain money, goods, and services (by use of stolen mail and contents of stolen mail, to include stolen access devices and other negotiable items and i.d. information) from federally insured financial institutions by false pretenses, representations, and promises.

**As to Count 11 (Credit Application Fraud)**, the defendant agrees that, at trial, the United States would be required to prove beyond a reasonable doubt during the time charged the following.

1) In the EDCA, the defendant knowingly made a false statement to a federally insured financial institution and
2) The defendant made such statement with the intent of influencing, in any way, the action of the institution.

By his signature hereto, the defendant declares that he fully understands the nature and elements of the crimes charged in the Information to which he is pleading guilty, together with the possible defenses thereto, and he has discussed the felony offenses with his attorney. The defendant also understands: (a) the maximum penalties for his felony violations are as follows:

| COUNT | OFFENSE | MAXIMUM PENALTY DESCRIPTION |
|---|---|---|
| 2,3 | 18 USC 1341 | Mail Fraud<br>20 yrs imprisonment, 3 yrs TSR, $1,000,000 fine, restitution |
| 7 | 18 USC 1344(1)(2) | Bank Fraud<br>30 yrs imprisonment, 5 yrs TSR, $1,000,000 fine, restitution |
| 9 | 18 USC 1028A | Aggravated I.D. Theft<br>2 yrs consecutive to term for Counts 2 and 7<br>1 yr TSR, $250,000 fine, restitution |
| 11 | 18 USC 1014 | Credit Application Fraud<br>30 yrs imprisonment, 5 yrs TSR, $1,000,000 fine, restitution |

(b) if the term of supervised release (TSR) for his convictions is revoked, a 3 year additional period of consecutive incarceration may be imposed; and (c) a mandatory $100 penalty assessment for each felony conviction will be imposed in addition to any penalty imposed by the Court. Moreover, Lor understands the maximum sentence for his supervised release violations (Charges 1,2,3, and 4) -- resulting in mandatory revocation of supervision -- is 2 years custody.

18. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count(s) to which he is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

19. The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a). Except as stipulated herein, the parties reserve all rights regarding application of the Sentencing Guidelines and sentencing factors under 18 U.S.C. § 3553.

20. The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against her; and (f) not to be compelled to incriminate herself.

21. The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea(s), however, to give up the right to appeal all issues related to his guilty plea, convictions, all USSG applications and calculations, imposition of a "consecutive" sentence for his supervision violations, and or all rights otherwise to appeal the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which he is pleading guilty. The defendant specifically gives up the right

to appeal any order of restitution the Court may impose. Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights. In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims. The government will move to dismiss counts against the defendant at the conclusion of the sentencing hearing. However, if the defendant ever attempts to vacate his plea(s), dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights to charge the defendant with any dismissed counts.

22. The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations, including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed.

23. The defendant understands that, before entering guilty plea(s) pursuant to this plea agreement, he could request DNA testing of evidence in this case. The defendant further understands that, with respect to the offense(s) to which he is pleading guilty pursuant to this plea agreement, he would have the right to request DNA testing of evidence after conviction under the conditions specified in 18 U.S.C. § 3600. Knowing and understanding his right to request DNA testing, the defendant knowingly and voluntarily gives up that right to test all items of evidence there may be in this case that might be amenable to DNA testing. The defendant understands and acknowledges that by giving up this right, he is giving up any ability to request DNA testing of evidence in this case in the current proceeding, in any proceeding after conviction under 18 U.S.C. § 3600, and in any other proceeding of any type. The defendant further understands and acknowledges that by giving up this right, he will never have another opportunity to have the evidence in this case, whether or not listed above, submitted

for DNA testing, or to employ the results of DNA testing to support a claim that defendant is innocent of the offenses to which he is pleading guilty.

24. The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offense(s) to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

25. Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

26. The defendant further agrees that he has been advised by his attorney of all his rights under the Federal Rules of Criminal Procedure, including FRCP 11 and 32, and all his rights under the U.S. Constitution. The defendant agrees that he fully understands those rights and that he is satisfied with his attorney's representation.

27. I, Tou Fue Lor, have consulted with my attorney at great length, and I fully understand all my rights, including those rights contained in FRCP 11 and my constitutional rights, with respect to the offenses charged in the Information against me. I have read this plea agreement, including its incorporated Exhibit A, and I have carefully reviewed every part of it with my attorney. In signing this plea agreement, I was not under the influence of any disabling or mentally impairing drug, medication, liquor, intoxicant or depressant. Further, I was alert, attentive and fully capable of understanding the terms and conditions of this plea agreement. I understand the charges against me and the charges (by Information in Counts 2,3,7,9 and 11) to which I am pleading guilty and I understand the supervised release charges against me (as set forth in the superseding petition) and I agree to admit all such TSR charges. I agree that I will be sentenced to a term of incarceration under the Sentencing Guidelines and

18 USC 3553 for my criminal conduct and to pay full restitution for all of my criminal conduct. I am fully satisfied with my attorney's representation. I understand this plea agreement, and I voluntarily agree to this written plea agreement. I understand that no other terms or oral agreements exist, other than what appears in this plea agreement.

Dated: May 5, 2018

TOU FUE LOR
Defendant

28. I, DENNIS S. WAKS, am defendant Lor's attorney. I have fully explained to Mr. Lor the terms of this plea agreement and his rights with respect to all the charges against him and all potential charges against him. Mr. Lor wishes to plead guilty to the charges set forth in the Information in Counts 2,3,7,9 and 11 and he wishes to admit all 4 charges in the superseding TSR petition. To my knowledge, Mr Lor's decision to enter into this plea agreement is an informed and voluntary decision. Mr. Lor understands and agrees that he is guilty as charged in Counts 2,3,7,9 and 11 and as charged in the superseding violation petition. In signing this plea agreement, Mr Lor did not appear to be under the influence of any disabling or mentally impairing drug, medication, liquor, intoxicant or depressant. Further, from what I could discern based on my extensive discussion and "question and answer" experiences with Mr Lor regarding the Information, Complaint, the statutory charges, the superseding TSR violation petition, and the plea agreement, I have reason to believe that, considering the mental state under which he signed this plea agreement, Mr Lor was alert, attentive and fully capable of understanding the terms and conditions of this plea agreement.

Dated: May 5, 2018

DENNIS S. WAKS, Esq
Attorney For Defendant

29. The undersigned Assistant United States Attorney hereby accepts and agrees to this plea agreement for the United States.

MCGREGOR W. SCOTT
U.S. Attorney

Dated: May 7, 2018

MICHELLE RODRIGUEZ
Assistant U.S. Attorney

Plea Agreement (Lor)                                                                                                           11

EXHIBIT A (Factual Basis For Pleas)

30. The defendant, with the advice and assistance of his defense counsel, acknowledges and agrees that the following factual summary accurately describes the events underlying his criminal conduct and offenses of conviction.

1) On May 20, 2014, Lor was convicted and later sentenced to serve 18 months in federal custody for 18 USC 1028(a)(7) (unlawful use of means of identification of another for fraud) and 18 USC 1029(a)(3) (possession without authority of 15 or more access devices for fraud). On February 11, 2015, Lor commenced his 3 year term of federal supervision. Lor failed to report his whereabouts to federal probation from about July 11, 2017 through February 20, 2018.

2) Lor, from about early May 2017 through July 11, 2017, planned to steal money from financial institutions and by fraud obtain property and goods at the expense of financial institutions. Lor schemed to steal by making false statements to such banks, by falsely representing himself to banks, and by forging and altering financial instruments and presenting such false items to banks. Lor's false statements and items were material to the financial institutions, meaning, for example, Lor's false pretenses, forged and altered items, and misrepresentations as to his identity made a difference to each bank's decision to part with money, open an account, mail access devices and letters, and or enter a transaction. Lor furthered his scheme by getting stolen financial documents, items, and identification information of others. Lor then, working with others, transferred, used, and possessed the documents and information of others in making false statements related to his true identity, SSN, date of birth, address, income, and assets to merchants and financial institutions. Specifically, Lor tried to steal by false material pretenses from CapitalOne Bank, BBVA Compass Bank, American Express Bank, and Chase Bank, all such then being federally insured financial institutions.

3) On May 21, 2017, Lor obtained victim K.D.'s stolen CA driver's license (displaying his/her previous residential address on Hollow Oaks Court), social security card, cash, debit and credit cards, check book, house and mailbox keys (to his/her previous residence), his/her work identification badge, and insurance cards. Later on May 21, 2017, Lor -- posing as K.D. -- applied for a CapitalOne checking account using K.D.'s true name, date of birth, social security number, and previous address. Lor used his own cellular phone number for the false CapitalOne application. Lor created a phony email address to facilitate the account application and the taking over of victim K.D.'s identity. As a result of the fraudulent CapitalOne application, a checking account (ending in 1205) was opened and a CapitalOne360 debit card was issued in the name of victim K.D. CapitalOne, a federally insured financial institution, confirmed that on or about May 23, 2017 the debit card (ending in 0388) was sent via US Mail to K.D. at xxx Hollow Oaks Court for access to federally insured deposits.

4) On May 25, 2017, Lor submitted an online application for his own personal checking and savings accounts to BBVA Compass, a federally insured financial institution. For the application, Lor used his true phone number, email, and his residence mailing address on Auberry Drive in Sacramento. Lor also used the internet (IP address) at his residence for the application. On May 27, 2017, Lor deposited into the account check #2003, drawn on federally insured Bank of America (ending 0563), made payable to Tou Fue Lor in the amount of $80.00. Check #2003 was altered and reissued made payable to "Tou Fue Lor". This check was an item stolen during the burglary of victim K.D.'s vehicle. (The United States does not presently have evidence of the identity of the perpetrator of the vehicle burglary.) On May 28, 2017, Lor made another online BBVA application for checking and savings accounts. Lor -- posing as K.D. -- again used K.D.'s true name, date of birth, social security number, and CA driver's license. Lor again used his own true residence address on Auberry Drive, his residence internet access, and his own phone number (ending 9192). Pursuant to the fraudulent application and opening of these K.D. accounts, BBVA Compass debit card (ending in 3493) was issued for access to federally insured deposits and thereafter sent via US Mail to K.D. (Lor) on

Auberry Drive. On May 29, 2017, Lor deposited into BBVA account ending 2247 altered check #2005, drawn on federally insured Bank of America (account ending 0563), made payable to victim K.D. in the amount of $750.00. Also on May 29, 2017, Lor deposited into BBVA account ending 2247 altered check #447, drawn on federally insured Regions Bank (account ending 0587), made payable to victim K.D. in the amount of $500.00. These checks (#2005 and #447) were items stolen during the burglary of victim K.D.'s vehicle.

5) On July 3, 2017, Lor submitted an application to Chase Bank, whose deposits were then federally insured, for a line of credit to obtain federally insured funds. For this line of credit application, Lor used, without authority, the true name, date of birth, and social security number of victim M.A. For this completed application, Lor again used his residence internet address and his own true residence address (on Auberry Drive in Sacramento).

6) On July 11, 2017, law enforcement executed a California state search warrant at Lor's Auberry residence. A federal probation officer was present and examined Lor's computer related device (ipad) and observed it contained an image of an apparent fraudulent check. Lor then admitted to his probation officer that he possessed and transferred identity and financial information of others for methamphetamines. Lor also confessed to his probation officer that he was using illicit drugs. Law enforcement conducted a search of Lor's bedroom. Lor possessed items stolen from K.D. in his bedroom, including his/her driver's license and social security card. Lor had notes on victim K.D. that included "ksd BBVA checking", "kdxxxxx76", and notes specifically referring to the false accounts Lor opened while posing as K.D. ("BBVA" accounts ending 2255 and 2247). Lor also possessed in his bedroom notebooks containing Lor's victim profiles (in which Lor compiled victims' personal and financial information (including true name, social security number, date of birth, residential address, and driver license number)).

7) Lor possessed notes relating to additional victims, including names, dates of birth, bank names, addresses, phone numbers, and SSNs. When reviewing the profiles, law enforcement discovered Lor possessed notes relating to email addresses he created for purposes of fraud and i.d. theft. Lor possessed victim profiles for victims K.D., N.V. and M.A. Lor's victim profiles contained specific notes relating to victim N.V., including "Nxxxxxx R. Vxxxxxxx BBVA Compass Clear Spend" in reference to email "nv1962123@gmail.com". Lor possessed an American Express debit card (ending 2553) in the name of victim N.V. and a BBVA Compass debit card (ending 3296) in the name of victim N.V., which Lor fraudulently opened for purposes of stealing from banks. Lor, for BBVA card ending in 3296, posed as victim N.V. and submitted (on May 23, 2017) an application for this debit card online. The application used without authorization the true name, date of birth, and social security number of victim N.V. and Lor's address on Auberry Drive. Lor's application was approved and the debit card ending in 3296 was issued and sent via US Mail and common carrier.

8) In his bedroom, Lor possessed check stock for creation of phony checks using stolen information of victims. In his bedroom, Lor possessed manufactured checks made payable to Tou Lor, a Citibank statement in the name of Tou Lor, and a Wells Fargo Bank account application in the name of Tou Lor. On July 11, 2017, Lor was arrested by state law enforcement. After Miranda rights advisement and waiver, Lor again confessed that he exchanged victim identity and financial information for methamphetamine. Lor also confessed that he began using methamphetamine in the preceding couple of months.

9) Law enforcement determined Lor used his ipad to commit fraud, pose as victims to financial instituions, steal and attempt to steal federally insured money, and to research victims in order to steal their identities. He also used the ipad and email addresses to talk to associates about stealing victim information and using -- without authorization -- victim information to get federally insured money and credit by false pretenses. Lor's iPad contained scanned images of victim K.D.'s social security card, driver's license, bank paperwork, and other items that were originally located in his/her stolen wallet. Hundreds of images were recovered from Lor's iPad. There were dozens of scanned images of checks (in various states of alteration), driver's licenses, social security cards, and credit reports in the names of people other than Lor. Many of the images matched items found in

Lor's bedroom. One of the images depicted the true California driver's license of victim L.M. but displayed Lor's photograph.

10) During the July 11, 2017 search at Lor's Auberry Drive residence, law enforcement recovered Lor's numerous identification documents of others. The identification documents were issued for travel in interstate commerce, issued by agencies engaged in interstate commerce, and or issued regarding conducting transactions in interstate commerce. Based on review of Lor's profiles, iPad, check manufacturing and alteration activity, stolen property reports, and because Lor did not have authorization to have such information from victims, Lor knowingly possessed at least five (5) different identification documents, for fraudulent use and transfer, of numerous victims, including L.M., K.D., S.S., M.A., S.S., Y.L., and A.D.

31.  I, TOU FUE LOR, have read Exhibit A, the above Factual Basis for Plea, and agree that it is true and accurate.

Dated: May 5, 2018

_____
TOU FUE LOR
Defendant

32.  I, DENNIS S. WAKS, have read Exhibit A, the above Factual Basis for Plea, and agree that it is consistent with the discovery in this case and the documents, materials and evidence in this case.

Dated: May 5, 2018

_____
DENNIS S. WAKS
Defendant's Counsel

///